314-0796, Penny Griffith v. Kloger Council, you may proceed. Thank you. May it please the court, my name is Heather Calvert and I represent the appellant in this case, Penny Griffith. I would like to reserve five minutes for rebuttal. You will have that. Council, before we start, would you take a look at your appendix to your brief and tell me where you abstracted the record in this case? Why don't you go to the first exhibit in your appendix? It doesn't appear to be there, Your Honor. No, no, you did. You gave us an abstracted common law record, all 79 pages of it. The record in this case is 1,300 pages long. The rule requires you to abstract the entire record. Who's supposed to do this, our clerks? The rule says that we're supposed to get that in an appendix to the record. We didn't get it. I, for the life of me, cannot figure out what's confusing about the Supreme Court rules. You abstracted the common law record only, all 79 pages of it. The full record in this case is over 1,300 pages long. That means that if we want to find the sections of the record that you're talking about in your brief, the 1,200 series, the 500 series, the 1,300 series, we've got to do it ourselves. So, who's ever writing these briefs, you might tell them that they might want to read the Supreme Court rules before they find another one? At least they run the risk of having their brief stricken or their case dismissed? Sure. Go ahead. Your Honors, this is a case where a cervical fusion and a neck surgery was denied based, again, on a set of unreliable medical records, emergency room medical records. This is to be your theme of the morning. And you're facing the same manifest way that the evidence is standing here. That's correct, and that's important coming up. Your Honor, here, accident is not in dispute. We have a situation where Ms. Griffith was at work. She trips over a rug. She testifies, credibly, that she falls to her right side. She immediately fills out an accident report. She references multiple body parts. She testifies, or I'm sorry, the accident report references multiple body parts. She testifies that that refers to her right shoulder, her low back, and her neck. There is a witness to her fall. She is immediately taken to the emergency room by her manager. When she goes in to talk to the triage nurse, they take immediate notes showing, the immediate notes with the triage nurse show complaints of right low back pain. The ER notes, which are dictated three days later, show injury to the right lumbar spine, but yet they show an injury to the left shoulder. There was no diagnostic testing ever done to the left shoulder. She never complained about any pain to the left shoulder. There were no bruising on her left shoulder, no markings on her left shoulder. Five days prior, she had gone to another doctor for another treatment involving a completely unrelated issue. There were no complaints in those medical records of any injury to the left shoulder, the neck, the low back. However, after the accident date of November 9, 2008, which is undisputed, she then complained of severe headaches, low back pain, right shoulder pain, and pain when her turning her neck. She did wait a couple of months to go in and finally follow up with her primary care physician. She testified that she waited a couple months because she wanted to see if these issues would result on her own. She did have a prior workers' compensation injury to her left shoulder about five years back. She testified that she did not want to go through that process again. She was hoping it wouldn't have to turn into that type of claim. She follows up with her primary care physician. She complains to him of right shoulder pain, low back pain, and cervical pain. I think we know the facts. Let me hone in on what I think are the critical issues here for you to answer. Again, you have the burden of overcoming the manifest way of the evidence standard. According to this, when she presents the emergency rooms on the day of the fall, she doesn't specifically mention neck pain, correct? You may have your explanation for that, but does she mention specifically any neck pain? Well, that is what is at issue here. She testifies that she did complain of the neck pain. But the records don't verify that, correct? That's correct, Your Honor. Then, according to Dr. Weiss, there was conflicting medical opinions with respect to causation. The commission clearly believed Weiss over as a Dr. Kube? Dr. Kube, Your Honor. Kube, okay. So, Weiss says, look, if she had injured her neck during this fall at work at all, she would have experienced pain symptoms within 48 to 72 hours. She tells him she did not experience any pain until two weeks after the fall. The commission said, you know, we believe Weiss. Okay, then you have her own medical doctor is Kube, right? That's correct, Your Honor. He testifies that he was unfamiliar with the claimant's medical records. He gave an opinion that would support her. Nonetheless, is this true? He testified that she should have experienced neck symptoms within a week or less after the accident. I wouldn't be surprised, I would, within a day or two, if it was a week or two, then it's not related. Does he say that? I believe he said it would be unusual for her to complain of neck symptoms. I think he says if it was a week or two, it's not related, though. However, doesn't that sort of support Weiss's opinion as opposed to the claimant's position? Well, and there again, there's a discrepancy, I believe, in some of the reports because she denies telling Dr. Weiss that she did not experience pain symptoms until two weeks later. She testifies that she said that her pain started immediately, her neck pain started immediately. But there's no record of that. There is no record of that. However, Your Honors, if we could look to the emergency room records, all the evidence clearly points to an error in the medical records. She is referred to Dr. Stephen Orlovich of Great Plains Orthopedics for injury to the right shoulder. He performs a right rotator cuff repair on that shoulder. There are MRIs of her right shoulder. There are x-rays of her right shoulder. Nobody can test the fact that she's got a rotator cuff injury. Nobody can test the fact that she followed her work. The case surrounds the question of whether there's a causal connection between that injury and work. We know she had it, so don't give us a bunch of facts. Just tell us why the commission's finding that there is no causal relationship between that condition and her work injury is against the manifest way of the evidence in the face of Weiss's opinion. Because I think, Your Honor, if we look to the emergency room records, she indicates that she did experience cervical pain. If we look at the medical records, clearly they are an error. They indicate an injury to the left shoulder when there was no such injury. So I think that we have to look at the medical records as being an error. The medical records at the... Excuse me. And the commission, I mean, that argument was made, and the commission could have said, We agree with you. There must have been an error here. And if they would have, then your opposing counsel would be faced with an argument about whether or not the decision is against the manifest way of the evidence. But there is evidence in the record here to support the commission's decision, Weiss's opinion, as well as, to some extent, her own treating doctor's opinion. The petitioner testified, Your Honors, that she did experience neck pain immediately. The commission must not have believed that. And isn't that within their province? It is within their province, but we are asking that if you look at the medical records, if you look at all of the other medical records and look at the fact that the employee was a long-time employee of Kroger, she served on the safety committee. Wait a minute. Counsel, we don't make that decision. We don't decide who's a truth teller and who's not. The commission makes that decision. You had the same argument last time. And you've got to understand, we don't get to weigh the evidence. We don't care if she's a long-time employee and she's a wonderful person and that she loves her family and that she donates time at the local charities. It doesn't do anything for us. We have to decide this case based on rules, and one of the rules is that the commission determines who tells the truth and who doesn't. Now, unless their opinion on credibility is so unfounded or it's based on something so ridiculous that no rational person could base a decision on that, we're stuck with what they did. And if we're stuck with what they did, they didn't believe her. And they believed Weiss. What can we do with this case? Well, Your Honors, I'm asking you to look at the medical evidence. Prior to November 9th of 2008, she didn't have any cervical complaints whatsoever. She had never gone to any treating doctors for any issues. She complained of symptoms to her cervical area immediately after that fall. It is absent from the emergency room records, but again, we believe that's it. We have to believe her. Here's the problem with it. I'm just trying to be instructive. You have to be careful when you couch your arguments that you're not sort of inviting us through with credibility. The other thing that I'm hearing is you've been saying these medical records and both of your arguments today are in error. That requires a factual finding. Are you suggesting we, the appellate court, announce a decision that the medical records are in error? How would we ever make that determination? Think about that. How do we decide records are in error? It's a fact decision. Well, Your Honors, I'm asking you to say that the medical records are in error because they notated an injury to the left shoulder when there was no such injury to the left shoulder. That's not a finding of fact? There was no injury to the left shoulder, Your Honors. Did it really note an injury to the left shoulder or a complaint of mild left shoulder pain? Which did it say? I believe that the medical records said injury to left shoulder. I think the quote is mild left shoulder pain but said that her movement was unrestricted. I think that's the quote. Well, the petitioner denies having complained of any pain in the left shoulder. She had a prior left shoulder injury five years prior to that. Those issues had resolved. She never had any diagnostic testing done to the left shoulder. She complained of the cervical area immediately when she saw her primary care physician. So she goes in and she tells him that she had not had any pain in her neck area until after the fall. So she does not, she denies that she tells Dr. Weiss this. She denies that she tells Dr. Weiss that her pain complaints did not start until after two or three weeks or whatever she tells him. She testifies that she tells Dr. Kuby her pain in her neck started immediately. This is the information that Dr. Kuby has received. Dr. Kuby is making the opinion that, yes, if her pain complaints did not begin until two to three weeks later, then I would feel that it would be unrelated. Dr. Kuby did not say that he did not feel her condition was not related to her work accident, only that if she did wait or if the pain did not begin until two to three weeks later, that would be quite unusual. That would be, that would possibly be unrelated. So your entire argument rests on the credibility of the plaintiff, that she actually complained of pain sooner than two weeks after the incident. That's your entire argument. That's correct, Your Honor. There is nothing else. There is nothing else to argue about. Well, she testified that she did feel pain immediately after her spine. In order to accept your argument, we have to believe her. And we have to say the commission was wrong in not believing her, even though her medical records don't corroborate her testimony. And also the medical records, they say no cervical injury, and we understand that, but clearly the medical records are wrong. Correct. Okay, well, we'll go again. I mean, you've got to understand in these cases, I don't know where you're going with credibility. It's going nowhere. I mean, these appeals on this, I understand them, but the fact of the matter is if the only thing is credibility, it's a battle that is almost unwinnable. And asking again, Your Honors, to look at the fact that there was no preexisting injury, there was no intervening accident from November 9, 2008, up until the time that she seized Dr. Hoffman. The only accident that we have here is the fall of November 9, 2008. Prior to November 9, 2008, she didn't have any accidents. She had never had any neck complaints. All right, so you're saying that those events would corroborate her testimony. Is that what you're saying? That's correct. That's correct, Your Honor. If you get an argument, you certainly will be considered. Very good. Thank you, Counsel. Thank you, Your Honor. You'll have time to reply. Counsel, you may respond. Good morning, Justices. Counsel, may it please the Court. My name is Murray Pinkston, representing the respondent in this matter. I certainly take it to heart that the commission determines credibility. I rise to echo that and to present myself for any questions or comments that the panel might have. I don't think we see any. The respondent rests. Thank you very much. Counsel, may we reply? No? Okay, very good. Thank you, Counsel, both for the argument in this matter. We'll be taking our advisement and a written disposition shall issue. The Court will stand in recess subject to call.